IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01833-MSK-MJW

JASPER L. GARCIA,

       Petitioner,

v.

SUSAN JONES,
ARISTEDES ZAVARAS, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

       Respondents.

---

## RECOMMENDATION ON
## AMENDED APPLICATION FOR A WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2254 (Docket No. 6)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


       This case is before this court for a report and recommendation pursuant to an

Order of Reference to Magistrate Judge issued by Judge Marcia S. Krieger.  (Docket

No. 14).

       In his Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. §

2254 (Docket No. 6), the pro se incarcerated petitioner, Jasper L. Garcia, attacks a

judgment of conviction entered in the District Court of Denver County on April 16, 2004,

following a jury trial.  Petitioner was convicted of one count of first degree assault and

one count of disorderly conduct and was sentenced to a term of imprisonment of sixteen

years.  The conviction was affirmed by the Colorado Court of Appeals ("CCA") on May

17, 2007, in an unpublished opinion, and the Colorado Supreme Court denied certiorari

on July 13, 2007.  Petitioner also filed two Colo. R. Crim. P. 35 motions which were denied by the trial court.  Petitioner then filed the instant petition.

Pursuant to an Order to Draw in Part and to Dismiss in Part issued by Judge Zita L. Weinshienk on November 20, 2009 (Docket No. 12), Claim Two of the petition was dismissed, leaving only Claims One and Three remaining.  In Claim One, petitioner asserts that the state failed to prove beyond a reasonable doubt that he caused serious bodily injury, which he claims is a necessary element of first degree assault pursuant to § 18-3-202(1)(A), C.R.S.  In Claim Three, petitioner asserts that the District Court incorrectly instructed the jury by stating that only "bodily" injury was required for a conviction of assault in the first degree under § 18-3-201(1)(A), C.R.S.   Respondents have filed an Answer to Order to Show Cause (Docket No. 17) in which it is asserted that the two claims fail to justify habeas relief, and thus the action should be dismissed with prejudice.

The court has considered the amended petition (Docket No. 6), the Answer to Order to Show Cause (Docket No. 17), the state court records, the court's file, and applicable statutes, Federal Rules of Civil Procedure, and case law.  The court now being fully informed makes the following findings, conclusions of law, and recommendation that the petition be denied and dismissed with prejudice.

**Standard of Review**

"In the course of reviewing state criminal convictions in federal habeas proceedings, a federal court does not sit as a super-state appellate court."  Slater v. Milyard, 2011 WL 1990560, at *2 (D. Colo. May 23, 2011).  "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 it must

decide whether the [petitioner] is in custody in violation of the Constitution or laws or

treaties of the United States.  The court does not review a judgment, but the lawfulness

of the petitioner's custody *simpliciter*."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 730

(1991) (internal quotations and citations omitted).  The court's review of the petitioner's

petition for a writ of habeas corpus is circumscribed by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA").  <u>Byrd v. Workman</u>, — F.3d — , 2011 WL

2084204, at *4 (10th Cir. May 27, 2011).  More specifically:

> Under the AEDPA, the standard of review applicable to a particular claim
> depends on how that claim was resolved by the state courts. . . .  Where
> the state court has adjudicated a claim on the merits, we may only grant
> relief if the state court's decision "was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States," . . . or "was based
> on a unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding," . . . .  We presume that the
> factual findings of the state court are correct unless the petitioner rebuts
> that presumption by "clear and convincing evidence."
>
> "In applying 28 U.S.C. § 2254(d), we first ask whether the principle
> of federal law invoked by the petitioner was clearly established by the
> Supreme Court at the time of the state court judgment." . . .  If so, this
> court then inquires "whether the state court decision was contrary to or
> involved an unreasonable application of that clearly established federal
> law." . . .  As [the Tenth Circuit has] previously explained,
>
>> [u]nder the "contrary to" clause, we grant relief only if
>> the state court arrives at a conclusion opposite to that
>> reached by the Supreme Court on a question of law or if the
>> state court decides a case differently than the Court has on a
>> set of materially indistinguishable facts.  Under the
>> "unreasonable application" clause, relief is provided only if
>> the state court identifies the correct governing legal principle
>> from the Supreme Court's decisions but unreasonably
>> applies that principle to the facts of the prisoner's case.
>
> . . .
>
> As the Supreme Court has recently underscored, "AEDPA imposes

4

a 'highly deferential standard for evaluating state-court rulings,'" . . . —- one that "demands that state-court decisions be given the benefit of the doubt," . . . .  Rather, in order for this court to grant relief, "we must be convinced that the application was also objectively unreasonable." . . . .  "This standard does not require our abject deference, but nonetheless prohibits us from substituting our own judgment for that of the state court." . . . .

Id. (citations omitted).

## Background

The CCA summarized the facts of this case as follows:

Around midnight on May 1, 2003, the victim (K.B.) left a bar downtown with a group of friends.  While leaving, they heard glass shattering in the parking lot where their vehicles were parked.  The group then confronted three men in the parking lot.

An altercation broke out, in which the victim and one of his friends fought with defendant and two other men.  K.B. was struck on the back of the head and in the face with a shovel three times during the altercation. Two of the blows were administered by defendant.  K.B. was able to wrestle the shovel from defendant.

After a short foot chase, defendant was arrested . . . .

People v. Garcia, (Colo. App. No. 04CA1499, May 17, 2007) (unpublished) (at 1).

## Insufficient Evidence

In petitioner's first claim for relief, he asserts that the "[e]vidence of serious bodily

injury was not sufficient. . . . .  The state failed to prove beyond a reasonable doubt that

Mr. Garcia caused serious bodily injury, a necessary element of 1st degree assault

pursuant to C.R.S. § 18-3-202(1)(A)(2003)."  (Docket No. 6 at 5).  The CCA rejected this

claim on the merits, finding as follows:

Defendant argues that the state failed to prove beyond a reasonable doubt that he caused serious bodily injury.  We disagree.

In evaluating the sufficiency of the evidence, a reviewing court must determine whether the evidence, viewed as a whole and in the light most

favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged by a reasonable doubt.  See People v. Rodriguez, 914 P.3d 230 (Colo. 1996). The prosecution must be given the benefit of every reasonable inference that might be fairly drawn from the evidence.  See People v. Gonzales, 666 P.2d 123 (Colo. 1983); People v. Downer, 192 Colo. 264, 557 P.2d 835 (1976).  If the prosecution presents evidence from which the trier of fact may properly infer the elements of the crime, the evidence is sufficient to sustain the conviction.  See People v. Montano, 195 Colo. 420, 578 P.2d 1053 (1978).

First, defendant asserts that the element of serious bodily injury necessary to establish first degree assault was not proved because the evidence submitted at trial established only a risk generally arising from defendant's conduct, and not a substantial risk resulting from the injuries actually sustained, as required.  Second, he argues that K.B.'s testimony concerning his own injuries was legally insufficient to support a finding of serious bodily injury.  Third, he argues that the evidence offered was insufficient to support the conviction because the prosecution's only witness testifying to the existence of bodily injury testified that his conclusion was based on risks of defendant's conduct and not the actual injury.

The degree of injury a victim has suffered must be determined by the trier of fact.  See People v. Thompson, 748 P.2d 793 (Colo. 1988); People v. Watkins, 196 Colo. 377, 586 (1978).  If there is evidence that at the time of the injury there was a risk of serious bodily injury, that evidence is not negated because the condition of the victim changed over time. See People v. Thompson, supra, 748 P.2d at 794 ("[t]he trial court . . . erroneously considered serious bodily injury at the time of trial rather than at the time of the injury"); see also § 18-1-901(3)(p), C.R.S. 2006 ("serious bodily injury" is "bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious disfigurement, [or] a substantial risk of protracted loss or impairment of the function of any part of organ of the body").

Here, when the emergency room physician first examined K.B., he noted symptoms consistent with the type of brain injury sustained in blunt force trauma, such as slurred speech and unsteady gait.  These observations, in conjunction with information that K.B. had been struck in the head with a shovel, lead him to conclude that K.B. had a substantial risk of death or loss or impairment of brain function, even though he could not diagnose either at that time.

Although after observation the physician discharged K.B., that

change in status does not affirmatively dispel the earlier observation of a
likely serious brain injury caused by defendant's actions.  <u>See</u> <u>People v.
Thompson</u>, <u>supra</u>, 748 P.2d at 794.  The physician indicated that in his
expert opinion that, when K.B. was admitted to the emergency room, he
suffered a substantial risk of serious bodily injury.  He additionally testified
that even when K.B. was discharged, K.B. was given instructions to return
should certain symptoms manifest themselves, as he was still at risk of
suffering a brain injury.

Thus, although K.B. did not actually suffer brain injury, he was still
at risk of such injury, both at the time of the assault and even at his
discharge from the hospital.  And although defendant argues that because
K.B. did not actually suffer brain injury the evidence was insufficient to
support his conviction, the statute requires only the risk, which the doctor's
testimony supported.  <u>See</u> § 18-1-901(3)(p).

Thus, on the basis of the evidence submitted at trial, the jury could
have reasonably determined that the injury, suffered at the time of the
attack, involved a substantial risk of death, permanent disfigurement, or
loss or impairment of function of a part of the body.

<u>People v. Garcia</u>, at 2-5 (Colo. App. May 17, 2007).

Petitioner's constitutional challenge to the sufficiency of the evidence is governed

by <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).  <u>Aguilar-Ramos v. Medina</u>, 2011 WL

883055, at *6 (D. Colo. Mar. 14, 2011).  "A § 2254 'applicant is entitled to habeas

corpus relief if it is found that upon the record evidence adduced at the trial no rational

trier of fact could have found proof of guilt beyond a reasonable doubt.'"  <u>Anderson-Bey</u>

<u>v. Zavaras</u>, – F.3d –, 2011 WL 1760026, at *2 (10th Cir. May 9, 2011) (quoting <u>Jackson</u>,

443 U.S. at 324).  The court's "review under this standard is sharply limited, and a court

faced with a record of historical facts that supports conflicting inferences must

presume–even if it does not affirmatively appear in the record–that the trier of fact

resolved any such conflicts in favor of the prosecution, and must defer to that

resolution."  <u>Brown v. Sirmons</u>, 515 F.3d 1072, 1089 (10th Cir. 2008) (internal quotation

marks and alterations omitted).

Here, respondents correctly assert that the CCA applied a standard virtually identical to <u>Jackson</u>. While the CCA, in affirming the conviction on direct appeal, did not cite to the <u>Jackson</u> decision, the court effectively acknowledged the <u>Jackson</u> standard when it stated that "[i]n evaluating the sufficiency of the evidence, a reviewing court must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged by a  reasonable doubt." Therefore, this court agrees with the respondents' contention that the CCA's decision cannot have been "contrary to" Supreme Court precedent within the meaning of § 2254(d)(1). <u>See</u> <u>Young v. Sirmons</u>, 486 F.3d 655, 667 (10th Cir. 2007) (because state appellate court applied the <u>Jackson</u> standard to sufficiency claim, inquiry was limited to whether its determination that the evidence was sufficient to support the jury's verdict was reasonable).

This court further finds that the CCA reasonably applied that standard in rejecting petitioner's argument that the evidence was insufficient.  Respondents assert that as for "unreasonable application," plaintiff's claim contends that the evidence was insufficient that he caused the victim serious bodily injury, but he does not posit a specific deficit in the evidence.  Therefore, respondents rest on the CCA's resolution of the claim he raises here.  Respondents note that before the CCA, petitioner argued that while the evidence showed that there was a risk that his blows to the victim's head had resulted in serious bodily injury as defined by statute, that risk was never realized; instead, the victim left the emergency room after a few hours of monitoring.

8

As noted by the respondents, however, Colorado statute defines "serious bodily injury" as "bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, [or] a substantial risk of protracted loss or impairment of the function of any part or organ of the body . . . ." § 18-1-901(3)(p), C.R.S.  In this case, the CCA observed that under Colorado law, the degree of injury suffered in an assault is a question for the jury, and it then held that under the statute, "if there is evidence that *at the time of the injury* there was a *risk of serious bodily injury*, that evidence is not negated because the condition of the victim changed over time."  (emphasis added). The CCA noted that when the victim was admitted to the hospital, he presented with slurred speech and an unsteady gait and that these observations, in conjunction with information that the victim had been struck in the head with a shovel, led the doctor to conclude that the victim had a substantial risk of death or loss or impairment of brain function, even though the doctor could not diagnose either at that time.  Although the victim was discharged a few hours later, the hospital discharged him after instructing him to return should certain symptoms manifest themselves, as he was still at risk of suffering a brain injury.  The CCA concluded that the victim's change in status from observation to discharged did not "affirmatively dispel" the doctor's earlier determination that the victim likely suffered serious brain injury because of the defendant's conduct. Therefore, the CCA concluded that the jury could have reasonably determine that the injury, suffered at the time of attack, involved a serious risk of death or loss or impairment of function of the brain.  This court finds that the CCA's application of the <u>Jackson</u> standard was not unreasonable and was supported by the evidence presented

at trial.  Therefore, petitioner is not entitled to habeas relief based upon Claim One of

his petition.

**Jury Instruction**

        In his remaining claim for habeas relief (Claim Three), petitioner asserts that

"[t]he District Court erred by incorrectly instructing the jury in open court that only 'Bodily

Injury' was required for a conviction of Assault in the First Degree under C.R.S. § 18-3-

202(1)(A)."  (Docket No. 6 at 6).  The CCA also rejected this claim, finding as follows:

>         Defendant argues that the trial court committed reversible error
> when it stated to the jury in its oral instructions that the elements of first
> degree assault include "bodily injury," rather than "serious bodily injury."
> Although we agree that the oral instruction was in error, we conclude that
> it did not rise to the level of plain error.
>
>         Defendant failed to object at trial, and therefore reversal is
> warranted only if the error is plain, that is, both obvious and substantial.
> An error is substantial when it so undermines the fundamental fairness of
> the trial itself as to cast serious doubt on the reliability of the conviction.
> For plain error in jury instructions to warrant reversal, the error must affect
> a substantial right and there must be a reasonable possibility that the error
> prejudiced the outcome of the proceeding.  An instructional error does not
> rise to plain error if, when read in conjunction will all other instructions, the
> instruction adequately informs the jury of the law.  People v. Miller, 113
> P.3d 743, 750 (Colo. 2005).
>
>         Here, each juror received a copy of the instructions bearing the
> correct definition of first degree assault as requiring serious bodily injury
> and not just bodily injury.  It appears that even defense counsel did not
> notice the mistake during the reading of the instructions, as he failed to
> object.  No other reference to first degree assault requiring only bodily
> injury was made during the reminder [sic] of trial.  Closing arguments by
> both defendant and the state stressed the existence of serious bodily
> injury, and neither side argued that the mere existence of bodily injury
> raised the crime to a first degree assault.  Our review of the record
> suggests that the trial court's omission of the word "serious" was an
> unintentional mistake, noticed by neither the state nor the defense.
>
>         We conclude that this single, isolated incident did not prejudice the
> outcome of the proceeding.

People v. Garcia, at 9-10 (Colo. App. May 17, 2007).

"[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004). "Instead, an error in a trial proceeding must be one that implicates 'fundamental fairness' in order to constitute a constitutional violation." Slater v. Milyard, 2011 WL 1990560, at *4 (D. Colo. May 23, 2011) (citing Estelle v. McGuire, 502 U.S. 62, 73 (1991); Calderon v. Coleman, 525 U.S. 141, 145 (1998) ("a federal court may grant habeas relief based on trial error only when that error 'had substantial and injurious effect or influence in determining the jury's verdict'") (citation omitted)).  "In the context of jury instructions, fundamental fairness requires that a criminal defendant be provided a meaningful opportunity to present a complete defense, and incorrect jury instructions may divest a defendant of this opportunity." Id. (citing Mathews v. United States, 485 U.S. 58, 63 (1988); Bradley v. Duncan, 315 F.3d 1091, 1096 (9th Cir. 2002)).  "However, federal habeas relief is available only when the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. (citing Estelle, 502 U.S. at 71) (internal quotations omitted).  As such, "[a] § 2254 petitioner has a heavy burden in attempting to set aside a state conviction based on an erroneous jury instruction." Id. (quoting Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997)). The improper instruction "may not be judged in artificial isolation," id. (quotation omitted), but must be considered "in the context of the instructions as a whole and the trial record." Id. (quoting Estelle, 502 U.S. at 72).

"[A]n instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or

innocence." Neder v. United States, 521 U.S. 1, 8 (1999).  "Therefore, if the trial court

committed constitutional error, the habeas court must then consider whether the error is

harmless under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619, 638

(1993); see also Neder, 527 U.S. at 8 (holding that a jury instruction that mis-describes

an element of an offense is subject to harmless error review); Scoggin v. Kaiser, 186

F.3d 1203, 1207 (10th Cir. 1999) (recognizing that '[a] misstatement of an element in jury

instructions is subject to harmless error analysis on habeas review.').  Under the Brecht

standard, the habeas court must determine whether, in light of the record as a whole,

the error had a 'substantial and injurious effect or influence in determining the jury's

verdict.' Brecht, 507 U.S. at 637."  Slater v. Milyard, 2011 WL 1990560, at *5 (D. Colo.

May 23, 2011).

Here, respondents correctly note that the CCA applied the state's plain error

standard, which borrows elements from the Supreme Court's plain error standard.  The

CCA held that the omission of the word "serious" from the oral instruction would require

reversal if it affected a "substantial right" and prejudiced the defendant, that is, it raised

a "reasonable possibility that the error prejudiced the outcome of the proceeding."  The

court then concluded that the petitioner was not prejudiced because each juror had

received a correct written elemental instruction, there were no other instances in which

first degree assault was described as requiring only bodily injury, and closing arguments

by both the defendant and the state stressed the existence of serious bodily injury, and

neither argued that the mere existence of bodily injury was sufficient.

Having reviewed the state court record, this court finds that the CCA's conclusion

is not an unreasonable application of Supreme Court precedent nor an unreasonable

determination in light of the facts presented. In light of the record as a whole, the

omission of the word "serious" from the instructions did not have a substantial and

injurious effect or influence in determining the jury's verdict. Therefore, petitioner is not

entitled to habeas relief based upon Claim Three of his petition.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Amended Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (Docket No. 6) be **denied and dismissed with**

**prejudice**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case. A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy. The District Judge need**

**not consider frivolous, conclusive, or general objections. A party's failure to file**

**and serve such written, specific objections waives *de novo* review of the**

**recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**<u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley</u>**

**<u>v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: June 14, 2011          s/ Michael J. Watanabe
      Denver, Colorado       Michael J. Watanabe
                             United States Magistrate Judge